## No. 2926.

## TOMAS ARISPE *v.* THE STATE.

1. THEFT—POSSESSION OF RECENTLY STOLEN PROPERTY—CHARGE OF THE COURT.—With reference to the defendant's explanation of his possession of recently stolen property, the trial court charged the jury as follows: "If you believe from the evidence that the animal in question had been recently stolen, and the defendant was found in possession of the same, and, when his right to the possession of said animal was first challenged, he gave a reasonable account thereof, consistent with his innocence, it devolves upon the State to show that it was untrue.   If, however, when his possession was first challenged, he failed to reasonably and satisfactorily account for his possession thereof, you

will find him guilty as charged in the indictment." *Held*, that the latter clause of the said charge is erroneous, not only because it is upon the weight of evidence, but because it restricts the defensive proof to an opportune and reasonable explanation of the possession by the accused of the stolen property.

2. SAME—FACT CASE.—See the statement of the case for evidence *held* insufficient to support a conviction for theft, inasmuch as the defendant's explanation of his possession of the property—the only inculpatory proof against him—was not only reasonable and uncontradicted, but was strongly corroborated by other evidence on the trial.

APPEAL from the District Court of Webb. Tried below before the Hon. J. C. Russell.

The conviction in this case was for the the theft of a horse, the property of Luis Telles. The penalty assessed against the appellant was a term of five years in the penitentiary.

Luis Telles was the first witness for the State. He testified that he had lived in Laredo about forty-six years, and had known defendant since he, defendant, was quite a youth. The witness was at his ranch in Webb county on the tenth day of July, 1887, and on that day he missed one of his horses. He at once began a search for the animal, and finally found and recovered it. He went first to the crossing of the river, where he found the tracks of three horses. He followed that trail to the summit of the hill, where the said tracks were joined by the tracks of another horse. He then trailed the four tracks to an arroyo, where he lost them. He then went back to town, and struck the trail of a single horse and followed it until it joined the tracks of the three horses first mentioned. He then went back to town and notified the sheriff of the disappearance of his horse, and of his discovery of the said tracks. The witness and three other parties then followed the trail to a point near Patos, between nine and ten leagues distant from Laredo, where they found the defendant, Trinidad Buitran and Rosalio Martinez, and five horses, one of which was the horse of the witness which he was hunting, and another one the horse of said Buitran. The said parties were lying down when the witness and his party reached their camp, and, the witness supposed, were asleep, as they manifested no knowledge of the approach of witness until the party got within ten or twelve steps of them. The five horses were about forty or fifty yards from where the parties were lying down, but witness could not now say whether or not they were tied. The witness's horse, which was

a roan animal, in the witness's brand, was among the said five animals. The witness did not know whether or not the defendant knew his brand, but that brand had been of record in Webb county for three years. The witness's ranch was about five miles below the town of Laredo. The witness's said horse was hoppled on the range near his ranch, by one of his sons, about eight o'clock on the evening of July 9, 1887. By four o'clock on the next morning that horse disappeared, and witness left his ranch about five o'clock to look for him. He found the trail of the three horses near the bank of the river. The trail of the fourth horse he found about three or four hundred yards from the bank of the river, and the four trails came together about two hundred steps from that point. The trails of the horses showed the presence of but one man. The tracks at the point where the trail of the three horses and that of the fourth horse came together showed that hopples had been removed from the said fourth horse at that point. That horse was the horse of the witness. The trail which led to the point near the Patos ranch, where the parties and horses were found, was the same which the witness found near the bank of the river, the fifth horse joining it between the river and the Patos. The witness left his ranch about five o'clock a. m., to look for his horse. It was about half past five o'clock a. m. when he reached Laredo the first time, and about half past eleven when he reached that town the second time, and about one o'clock p. m. when he and his party found the horses near the Patos ranch. The witness's horse was taken in Webb county, Texas, without his knowledge or consent. The defendant had never been to the witness's ranch, so far as the witness was advised.

On his cross examination, the witness said that the track of the horse he had designated in his testimony in chief as the fourth horse was the track of his roan horse, the animal referred to in the indictment. As shown by the trail, the hopples were taken off that horse at the point where the said trail joined the trail of the three horses. The trails at no point showed the presence of more than one man with the said horses, either before or after the said trails came together, and the witness was unable to say when or where the two parties joined the party who was with the horses at first. Anastacio Hernandez and Manuel Escobar brought the horses to the camp of the men, from where they were when found. They were not assisted by the defendant or either of the other men. All that the witness knew

about the possession of the horses, when found, was what he was told on the ground, and the fact that the horses were found near the point where the three men were lying down. The witness directed most particular attention to Rosalio Martinez, who had a gun in his possession. At the said camp, the defendant gave an account of his apparent connection with the said horses. He said that he rode one of the said horses, a brown animal, to that camp, and Rosalio Martinez loaned him the said horse for that purpose, and that the said Martinez was in possession of the other horses. Martinez was present when the defendant made that statement, but said nothing in reply.

On his re-examination, this witness said that he and his party arrested Rosalio Martinez as a thief. Defendant protested that he was innocent of any culpable connection with the horses. Witness then asked Rosalio Martinez about his connection with the animals, and Rosalio replied: "Ask and you will find out." The witness then again asked defendant about the possession of the horses, and he told witness, as before stated, that Rosalio Martinez was in possession of all the horses, but loand him the brown horse which he rode to that point. Rosalio Martinez, who was present, said nothing whatever in reply to defendant's statement. The witness's query of the defendant was made after his inquiry to Martinez, and after the answer of Martinez, to "ask and you will find out." Over defendant's objection, the witness stated that he testified on the examining trial of this case before Justice Winslow, and he identified his signature to the record of testimony exhibited to him. He stated that his testimony as read to him from that record was in part incorrect or incomplete. As a matter of fact, the witness did ask Rosalio about the possession of the horses, and Rosalio answered as above stated by witness, but, evidently, witness omitted to state that fact on the trial before Winslow. The witness had no bias or prejudice against the defendant.

N. Martinez was the next witness for the State. He testified that he had known the prosecuting witness Telles and the defendant for many years. The witness remembered that a horse was stolen from Telles on the tenth day of July, 1887, on which day the witness accompanied Telles in search of the said horse. Telles came to witness's house early on that morning, bearing an order to witness from the sheriff to accompany Telles in pursuit of the horse. Telles then piloted the witness to a trail of horses near a creek, from which point the trail was

followed to the point where the horse and other horses were found. The place where the horses were found was five or six leagues from Laredo, and was known by the name of Travesada. At the said point the defendant, Trinidad Buitran and Rosalio Martinez were arrested, and taken thence to jail. Four horses were also found at that point, one being a brown, one a bay, one a gray and the other, which was the horse of Telles, a bald faced roan. The witness and his party reached the camp of the three men about one o'clock on the said tenth day of July. The men at that time were lying down, and the horses were grazing about fifty steps distant from where they were lying.

On his cross examination, the witness said that, counting Buitran's horse, there were five horses in the bunch at the camp of the said parties. Defendant was lying down when the witness and his party reached the camp. He got up at once and shook hands with witness, but made no attempt to escape. The witness then took the defendant aside and had a conversation with him about the said horses. He told the defendant to tell him who had or was in possession of the horses. He told witness that the horses were in the possession of Rosalio Martinez, and that Rosalio claimed to own them. Two of the witness's party then went to where the horses were grazing, about fifty steps distant, and drove them into camp. The defendant then asked the witness to let him go, as he was entirely innocent of any culpable connection with the horses, and was too poor to defend against this prosecution, while another was pending against him.

L. Garza testified, for the State, that he lived on the Mexico side of the Rio Grande, about two miles below the ranch of the prosecuting witness Telles. The witness missed his certain brown horse on the morning of July 10, 1887, and tracked it to the crossing of the river in front of the Telles ranch, at which point at least two horses had crossed into Texas. The witness crossed the river about eleven o'clock on the said day and went to Laredo. On the next day he recovered his said brown horse from Sheriff Dario Sanchez. Witness's ranch was a little more than a league distant from the town of New Laredo. He slept at his said ranch on the night before he missed his said horse. He heard no person pass, nor did he learn of any person passing his house on that night. The witness did not consent to the taking of his said horse by any person, and he did not know who took it.

Justice of the Peace A. Winslow testified, for the State, that the defendant was examined before him upon the charge of stealing the Telles and three other horses. The defendant and Rosalio Martinez were both present on that examination, and it was the recollection of the witness that both of them cross-examined the witnesses. The writing exhibited to the witness is the testimony given on that examination by the prosecuting witness Telles, and also the statement of Rosalio Martinez, which testimony and statement are signed respectively by Telles and Martinez. The wife of Martinez testified on that examination in the presence and hearing of the defendant. Defendant made no statement on that examination.

C. C. Pierce testified, for the State, that he was an attorney at law, and as such represented the defendant before the justice of the peace on the examining trial of this and the other three thefts charged against him. On the examination of this particular charge, the witness agreed with the prosecuting counsel that the testimony adduced by the State against Rosalio Martinez, who was charged separately with the same offenses, should be used against this defendant, the object being to save time. That agreement was not written out and signed, but was entered upon the minutes by the justice. The witness could not state positively that defendant consented to that agreement, understanding it.

Trinidad Buitran testified, for the State, that he lived at the Alamita ranch in Encinal county, Texas. He knew both the defendant and Rosalio Martinez. The witness went to the city of Laredo on the eighth day of July, 1887, and took quarters at the house of one Concepcione. Rosalio Martinez was at the said Concepcione's house when the witness arrived there on the said morning of July 8, and he remained there all of that day. Witness next saw Rosalio at the said house before sunrise on the morning of the ninth, and did not see him again until the next morning, which was the morning of the tenth. The witness, Rosalio Martinez's woman and Concepcione spent the day of July ninth at the house of the latter, and the witness went to bed in the said house at about ten o'clock on the night of the said ninth. He slept all of that night in the said house, and did not get up until early on the morning of the tenth, when he was awakened by Rosalio Martinez, who said that he was going to start to the ranch. When the witness got up he went out of the house and saw the defendant standing in the arroyo, about

fifteen steps distant from the house. The sun was not yet up. The witness went to the arroyo to salute the defendant, and saw two horses standing near him. Rosalio followed the witness to the arroyo, where the defendant and the two horses were. They said then that they were going to the ranch, and defendant asked the witness to go with them, and witness promised to overtake them on the road. Defendant made no statement to witness about the two horses at that time. The said two horses, one being a brown animal and the other a gray, were unsaddled when the witness first saw them in the arroyo. When he next saw them, which was when Rosalio and defendant started off, they were saddled. The saddles were taken from the house, one of them being loaned by Rosalio to the defendant. Rosalio then mounted the gray and defendant the brown horse, and they rode off together towards the Alamita ranch. The witness soon followed and overtook the two said parties about a mile and a half from Laredo. Defendant was still riding the brown and Rosalio the gray horse, and Rosalio was leading a bay and a roan horse, which he did not have when he left Concepcione's house, and which the witness had not previously seen. The said parties were traveling the main public road. Rosalio at that time was living at Concepcione's house. Witness did not know where the defendant was living, and he had not seen the defendant for a month previous to the said July tenth.

Cross examined, the witness said that, on the way to the ranch, on the morning of the tenth, Rosalio told witness that he had loaned the brown horse to the defendant to ride to the ranch. No statement about the horses was made to the witness on that morning at the house or arroyo by either the defendant or Martinez. The arroyo mentioned by the witness was a part of the yard enclosing Concepcione's house, and was the place where visitors or guests of Concepcione usually and customarily tied horses. After the witness overtook Rosalio and defendant on the road to the ranch, at which time Rosalio was leading the bay and the roan horse, he, Rosalio, told witness that he was going to the Nueces. When Rosalio left Concepcione's house on the morning of July 9, he left on horseback, and witness did not see him until the next morning when he came into witness's room and waked him up. But one saddle was taken out of Concepcione's house on the morning of the tenth, and that was the saddle loaned by Rosalio to the defendant. Rosalio had

the same saddle that he used on the previous day. The witness and the said Rosalio and the defendant, after witness joined them on the road, traveled until about eight o'clock in the morning, when they stopped and rested for a while. They then traveled until about noon, when they stopped for dinner. They stopped on the main road to the Alamita ranch, near the Patos ranch, where the defendant was reared, and it was at that point that they were overtaken by the officers. They had turned the horses loose to graze, and had laid down when the officers arrived. The witness went to sleep and was awakened by the officers in the act of dismounting from their horses. Some of the officers sat down, and some went for water before the arrest of witness, Rosalio and defendant was made. Defendant told the officers that Rosalio loaned him the brown horse, and that Rosalio had possession of and claimed the other horses. Rosalio was then near enough defendant to hear his said statement, but he said nothing. In going from Laredo to the point where they were arrested, the parties traveled the main road, Rosalio going in advance and leading the two horses, and witness and defendant riding together in the rear. En route they met M. Trevino and Jose Duran.

Re-examined, the witness said that he testified on the examining trial before Justice Winslow, but may have omitted to testify on that examination that Rosalio told him that he loaned the brown horse to the defendant to ride to the ranch. Rosalio, however, did make that statement to the witness at a point on the road, about a league distant from Laredo, and while they were on their way to the ranch. At that time the defendant had dropped behind witness and Rosalio. Witness, Rosalio and defendant were arrested at the same time, and in a very few moments after that arrest defendant told the officers that Rosalio had loaned him the brown horse to ride to the ranch. Defendant made the same statement to N. Martinez. Witness did not see N. Martinez take the defendant aside and talk to him. Rosalio never, at any time, told the witness that the said horses belonged to the defendant, and that he was hired by the defendant to convey the said animals away from Laredo. The horse that Rosalio rode away from Concepcione's house on the ninth was not the gray horse he rode off on the tenth, nor was it the brown horse that defendant rode on the tenth. Witness did not know what became of the horse that Rosalio used on the ninth. No horses other than the gray and

the brown were in the arroyo in Concepcione's yard on the morning of the tenth. Witness was not related to the defendant, but his sister was the wife of the defendant's brother.

At this point in the record appears the following: "The State introduced and read in evidence, to impeach part of the testimony of Louis Telles, a written statement as follows" [defendant objecting]:

The State of Texas, ⎱ Charged with horse theft.
No. 529          v.    ⎰
Tomas Arispe et als. ⎰ Now on this day, July 25, 1887, Louis Telles, being sworn for the State of Texas, says: "I lost a horse on July 8 or 9, from the Jarvio ranch, a few miles from Laredo. I gathered a pony and tracked them from a short distance from Laredo on the road to Pato ranch, to where I overtook this defendant and Rosalio Martinez. When I got there I found five horses in their possession, or rather, there were five horses there where they were. I went to get a canteen of water near by, and saw my horse, which was behind some bushes. As I came back to where defendant and Martinez were, Martinez sprang to his carbine and cocked it. I threw myself on him and we had a tussel for the gun. He then surrendered. Defendant was sitting on the ground and did nothing. The officers then arrested all parties. Defendant made no statement to me at this time, but afterwards, while on the road to town, I asked the defendant who it was that took my horse. He replied: 'I will tell you the truth, Martinez is taking him.' I then asked defendant what horse he was riding, and he pointed out the dark bay. I asked him where he got it, and he said that Rosalio Martinez loaned it to him. Defendant did not volunteer any statement to me in relation to his possession of any of this stock. My horse had my brand and two other brands on it. My brand has been on record since the year 1869 or 1870. My horse had been on my ranch, about four and a half miles from Laredo, for three or four years. Defendant has lived in Laredo all of his life. My horse was taken from my ranch in Webb county, Texas, and I trailed my horse from my ranch to an arroyo in Laredo. There were three other tracks accompanying the tracks of my horse, all of which tracks were fresh. I trailed these tracks up to within two blocks of the house of a woman named Concep-

-cione, in Laredo. I did not give any one consent to take my horse."

Cross examined: "I saw on the river where some person had -crossed three head of horses from the other side. This was opposite my ranch. They then came on and picked up my horse and I followed the tracks to town, on the arroyo sacate, within two hundred yards of the house of Concepcione, where one track -cut off and went in the direction of her house and two tracks returned. The party who took the horses was leading them, -or so it appeared to me. After I arrived where defendant and Matinez were, defendant had no opportunity of talking with me until we were on the road coming to Laredo, when I spoke to him and told him one of those horses was mine. He then -said Rosalio Martinez was taking my horse. Martinez was four or five steps away at that time. Defendant also told me that he had crossed from New Laredo, Mexico, on that morning, to go to the ranch with Buitran

Luis Telles."

And also the following: "The State introduced, over the ob-jection and exception of the defendant, to impeach part of the testimony of the witness Trinidad Buitran, a writing as follows: 'Trinidad Buitran, being duly sworn for the State, says: On Sunday morning, July 10, Rosalio Martinez came to my house before sun rise, and asked me if I was going to the ranch. I told him yes, but I was not ready. He then said Tomas Arispe was in the aroyo. I went to where he was and found two horses near by. One was a dark bay and the other was a gray. I did not notice whether the gray was a horse -or a mare. Tomas Arispe and the horses were fifteen steps from my house in the arroyo. I had not seen Tomas Arispe for more than a month before the morning spoken of. He did not -say anything to me, except asking me if I was going to the ranch. He did not ask me to lend him a saddle. About two hours after I saw him at my house I overtook the defendant and Martinez going in the direction of the Alamita ranch. Rosalio Martinez was leading two horses, and Tomas Arispe was riding one.'"

Cross examined: "I came in on Friday, July 8, and slept at the house of Concepcione, which is on the bank of an arroyo, where I found the family of Rosalio. I saw Rosalio on Saturday, but did not see him again until Sunday morning, when he

woke me up.   I slept at Concepcione's house that night.  When I saw Tomas Arispe on that morning at my house, he said that he had just come from the other side, and that he had been informed that there was a warrant from the United States Court out against him for smuggling a mule, and that he was going to the ranch until he could get bond.   If Tomas Arispe had wanted to find me early in the morning, he would have gone to the house of Concepcione.   Tomas Arispe had nothing to do with the other two horses.   Rosalio led them and Tomas rode a dark bay horse.   When I saw the horses in the arroyo they had no saddles on them.   On that morning I saw two horses in the arroyo, one of which was a gray and the other a dark bay.   When Tomas left he rode the dark bay horse.   When I overtook them afterwards, Rosalio was riding a bay horse, which was a different horse from the other two.   There was also a stranger who came to my house early in the morning.   I did not see them when they left the arroyo, but did see them when they were off some distance.

TRINIDAD BUITRAN."

"It is admitted by the State and defendant that the defendant was seen in Nuevo Laredo, Mexico, about six and seven o'clock p. m., Saturday, July 9, 1887.   It is agreed that evidence taken in cause No. 528 be taken and received in this cause."

E. Yglesias testified, for the State, that he knew Rosalio Martinez and his wife.  Rosalio and his said wife were both in Mexico, Rosalio being in jail.

A. Telles testified, for the State, that he saw the defendant in Nuevo Laredo, Mexico, on the opposite side of the Rio Grande from Laredo, Texas, at half past eight or nine o'clock p. m. on Saturday, July 9, 1887.   The witness crossed back to Laredo on the said night.

The defense introduced no evidence.

*Coopwood & Son*, for the appellant.

*W. L. Davidson*, Assistant Attorney General, for the State.

HURT, JUDGE.   This conviction was for the theft of a horse, the alleged property of Luis Telles.   The Assistant Attorney General has confessed error in the case.   When found in pos-

session of the horse in question, defendant and two other persons were present, and near by were four horses grazing.

Trinidad Buitran, Rosalio Martinez and appellant comprised the party supposed to be in possession of the horses. When the officer and his posse rode up they were asleep on the ground. The prosecutor states: "Defendant gave an account of his possession of the horse. He said that Rosalio Martinez loaned him the brown horse which he, defendant, had been riding, and that the others were in the possession of Rosalio. Rosalio was present when defendant said this, and remained silent. We arrested Rosalio as a thief. Defendant said that he was innocent of the affair." Witness N. Martinez stated: "When we arrested them defendant was lying down. He got up and shook hands with me. He did not attempt to escape. I took him aside and told him to tell me who had the horses and he told me that Rosalio Martinez was the one who had the horses; that he claimed to be the owner of the horses, and that he, defendant, was innocent of the affair, and asked me to let him go."

That Martinez loaned the horse to defendant was not only alleged by him when first found near the horses, but this fact was strongly corroborated by the testimony of Trinidad Buitran who was one of the party found near the horses, and who was arrested with defendant and Martinez. Indeed there is no inculpatory fact against defendant that is not explained by his statements made when first charged directly with the offense; and, instead of the other facts showing his explanation to be false, they very strongly corroborated his statement. By his explanation and the testimony of Trinidad Buitran every fact of apparent guilt is made to consist with his innocence. We therefore conclude that the verdict is against the evidence.

Appellant, when first called upon, having given a reasonable explanation of his connection with the stolen property, it was necessary for the court to instruct the jury upon this subject. This was done by giving the following charge: "If you believe from the evidence that the animal had been recently stolen, and defendant was found in possession of the same, and, when his right to the possession of said animal was challenged, he gave a reasonable account thereof, consistent with his innocence, it devolves upon the State to show that it is untrue." This may be correct; but, proceeding upon this subject, the charge is: "If, however, when his possession was first challenged, he failed to reasonably and satisfactorily account for

his possession thereof, you will find him guilty as charged in the indictment." This is unquestionably erroneous; it is not the law. The accused may fail to explain his possession, but certainly he would have the right to prove it innocent, though he made no explanation when first called on for one, or whether he ever attempted to make one. Besides this, the charge was upon the weight of evidence.

Because of the error in the charge, and because the evidence does not warrant a conviction, the judgment is reversed and the cause remanded.

*Reversed and remanded.*